Argued and submitted November 21, 1995, reversed and remanded April 17, 1996

Donna Marie WHITE,
aka Donna M. Derryberry
and Janice G. Chandler,
*Appellants,*

*v.*

Janice SIMPSON,
Wade Simpson and Dan Calvert,
Acting Sheriff of
Josephine County, Oregon,
*Respondents.*

Janice M. SIMPSON
and Wade Simpson,
*Respondents,*

*v.*

Michael A. ADAMS,
*Appellant,*

*and*

John DOES One through Ten,
*Defendants.*

(92-CV-0243; CA A83741)

915 P2d 1004

Dale L. Crandall argued the cause and filed the briefs for appellant Donna Marie White, aka Donna M. Derryberry.

Kathleen A. Evans argued the cause for appellant Janice G. Chandler. With her on the briefs was Evans, Freeby & Jennings.

Clayton Patrick argued the cause for appellant Michael A. Adams. With him on the opening brief were Patrick & Meadowbrook and John E. (Jack) Davis and Myrick, Seagraves, Adams & Davis.

Frank C. Rote, III, argued the cause for respondents Janice Simpson and Wade Simpson. With him on the brief was Brown, Hughes, Bird, Lane & Rote.

Matt Farmer argued the cause for respondent Dan Calvert. With him on the briefs were G. Catriona McCracken and Law Office of Robert E. Franz, Jr.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

The issues in this case arise from the attempted redemption of plaintiff Donna Marie White's (White) interest in a lot in Cave Junction (the property) after the sheriff sold it at an execution sale. Plaintiffs are White and Janice G. Chandler (Chandler), to whom White transferred her right of redemption. Defendants Janice M. Simpson and Wade Simpson (the Simpsons) are the purchasers at the sheriff's sale. Defendant Dan Calvert (the sheriff) is the acting sheriff of Josephine County, whose office conducted the sheriff's sale and subsequent proceedings.[1] Cross-claim defendant Michael A. Adams (Adams) is the present owner of a separate undivided interest in the property.

In their complaint, Chandler and White sought a judgment granting them the right to redeem the property; they also alleged that the sheriff violated 42 USC § 1983 by conducting the execution sale and attempted redemption improperly and thereby deprived them of a protected property interest under the color of law. After plaintiffs filed the case, the Simpsons added Adams as a cross-claim defendant and sought to quiet their title in the property free of his claims.

The trial court dismissed Chandler's claims as a sanction for her failure to appear at a deposition. It thereafter granted the Simpsons' motion for summary judgment, denying White any right to redeem and quieting title in the property in the Simpsons, subject to their paying Adams $7,250 for his interest. It also granted the sheriff's motion for summary judgment and dismissed the claims against him. White, Chandler, and Adams appeal. We reverse on all claims.

There are no serious disputes about the facts. In October 1985, White and her brother Robert White (Robert) received the property as an inheritance from their grandfather's estate. White lives in Alaska, and Robert lives in

---

[1] The sheriff's deputies, rather than the sheriff himself, took the actions that are at issue in this case.

Utah. Before they received title to the property, but presumably after their grandfather's death, White agreed to buy Robert's interest for $16,000 plus an additional $2,000; she paid him $10,000 as a down payment. In December 1984, White and Robert memorialized their agreement in a Trust Agreement in Lieu of Deed of Trust (the Trust Agreement), which set out the terms of the sale and made Robert the trustee of the property until White paid the balance due. In October 1992, Robert quitclaimed his interest in the property to Adams, who, like White, is an Alaska resident.

The Trust Agreement provides that White "hereby grants, bargains, sells and conveys" the property to Robert in trust for the purpose of securing her purchase of his interest. It contains a number of additional provisions that are appropriate to a security instrument but not to a deed absolute. The Trust Agreement obligates Robert or his successor to provide White a deed to the property upon payment in full; until then he retains the legal title to his half interest.

In 1991, one Wiley recovered judgments against White in the Alaska bankruptcy court and had them entered as a foreign judgment in Josephine County Circuit Court. On November 12, 1991, the sheriff sold White's interest in the property pursuant to an execution on that judgment. The Simpsons purchased the property at the execution sale for $6,300, which was not sufficient to satisfy the judgment in its entirety. The court entered an order confirming the sale on November 29, 1991.

Under ORS 23.560(1), White had 180 days from November 12, 1991, or until May 11, 1992,[2] to redeem the property. On April 27, 1992, she quitclaimed her interest in the property, specifically including any redemption rights, to Chandler, who also lives in Alaska. The same day, Chandler gave notice of her intent to redeem the property and requested, pursuant to ORS 23.560(4), that the Simpsons provide a verified accounting of the rents, issues, and profits of the property and of all amounts claimed as liens. Janice Simpson delivered a handwritten unverified accounting to

---

[2] May 10, 1992, when the redemption period would normally have expired, happened to be a Sunday. *See* ORS 174.120.

the sheriff on May 6, 1992. The sheriff did not send the accounting to Chandler until May 8; Chandler did not receive it until May 13. That day she mailed her objections to the accounting to the sheriff. Also on May 13, the sheriff delivered a sheriff's deed to the property to the Simpsons. Chandler's Alaska attorney thereafter sent the sheriff an attorney's trust account check for the amount that Chandler believed was necessary to redeem the property. The sheriff refused to accept the check and returned it on June 16, 1992. On June 18 he delivered a second sheriff's deed to the property to the Simpsons.

Plaintiffs filed this action in November 1992, seeking an accounting of the amount due on redemption, an opportunity to redeem, and attorney fees from the sheriff on their section 1983 claim. The Simpsons thereafter joined Adams and ten John Does as defendants and cross-claimed to quiet their title.

Soon after plaintiffs filed the case, the Simpsons' attorney informally sought to depose them. He was dissatisfied with the lack of response from plaintiffs' attorney and therefore noticed the depositions for February 17, 1993, in Grants Pass. Plaintiffs' attorney responded that plaintiffs would be unable to come to Grants Pass at that time but were available for deposition by telephone. Simpsons' attorney thereafter filed a motion for sanctions, seeking dismissal of the case and an award of attorney fees.

On May 7, 1993, the court verbally awarded attorney fees to the Simpsons and ordered plaintiffs to make themselves available for depositions within 30 days of that date, stating that it would dismiss the case if they did not. The court did not enter a written order stating those rulings until August 4. The parties thereafter agreed that defendants would depose plaintiffs in Grants Pass on June 7. Because of a scheduling conflict, the attorneys subsequently agreed to postpone the depositions to June 14. Plaintiffs' counsel did not check with his clients before agreeing to the change. White was deposed on that day. Chandler purchased an airline ticket so that she could also be available, but her employer insisted that she attend training scheduled for that date instead of going to Oregon, threatening her with the loss

of her job if she failed to attend. As a result, she was not present for the deposition at the scheduled time.

On August 4, 1993, the court entered an order dismissing Chandler's claims as a sanction for her failure to appear at the deposition; at precisely the same time it entered a written order memorializing its previous decision requiring her to appear within 30 days of May 7. The court did not make any factual findings to support the order of dismissal. It thereafter granted the Simpsons' and the sheriff's motions for summary judgment and entered judgment quieting title in the property in the Simpsons, subject to their payment of $7,250 to Adams to satisfy his interest. Plaintiffs and Adams appeal.

A preliminary question on plaintiffs' appeal, and the primary issue that Adams raises, is the nature of White's interest in the property at the time of the sheriff's sale. Adams argues that White conveyed legal title to the entire property to Robert by the Trust Agreement, subject to a vendee's equitable interest in White, and that Adams has succeeded to Robert's title. Because equitable titles are not subject to sale on execution, *Heider v. Dietz*, 234 Or 105, 115, 380 P2d 619 (1963); *Smith v. Ingles*, 2 Or 43 (1862), he contends, the Simpsons received nothing as a result of the sheriff's sale. As a result, Adams claims, the court should have quieted title to the property in him.

■■ Adams is partly correct; equitable titles are not subject to sale on execution, and White did not have the legal title to Robert's interest at the time of the sale. The problem with Adams' argument is that the Trust Agreement did not convey White's legal title in her half interest to Robert despite its apparent language of conveyance; rather, it gave Robert a lien on that interest in order to secure performance of her agreement to buy his half interest. Because the Trust Agreement shows on its face that it is a security instrument, it does not convey title but simply creates a lien. Despite the language of conveyance in the Trust Agreement, White retained the legal title to her half interest in the property, subject to Robert's lien.

■ The Trust Agreement is not a statutory trust deed, among other reasons because Robert does not meet the statutory requirements for a trustee. Even ignoring his failure to satisfy the qualifications described in ORS 86.790(1), as the beneficiary he is absolutely disqualified. ORS 86.705(6). Although it reflects an agreement for White to purchase Robert's interest, the Trust Agreement did not transfer legal title to her. There are no words of present conveyance from him to her. *See Lambert v. Smith*, 9 Or 185, 191-92 (1881). Under Oregon law a nonstatutory deed of trust designed as security for money has no other or greater effect than a mortgage, and in Oregon it is also clear that a mortgage does not convey title. *Thompson v. Marshall*, 21 Or 171, 176, 27 P 957 (1891); *see also* ORS 86.010 (mortgage is not conveyance so as to allow owner of mortgage to recover possession without foreclosure and sale); *Harper v. Interstate Brewery Co.*, 168 Or 26, 38-39, 43, 120 P2d 757 (1942) (deed absolute in form may be mortgage; deed of trust issued to creditor as security for debt is in effect mortgage).

■ Under these principles, Robert never had legal title to White's interest in the property, while White never had legal title to Robert's interest. Rather, Robert retained the legal title to his interest and received a lien on White's interest, while White obtained the equitable title to Robert's interest. At the time of the sheriff's sale, thus, the only legal interest that White held, and therefore the only interest that the sheriff sold, was a half interest in the property as a tenant in common with Robert. The sheriff could not sell White's equitable interest in Robert's undivided half interest; rather, after the sale she retained the right to pay the balance and receive the legal title to that half interest from Robert. For his part, Robert retained his lien on White's half interest to secure the payment of the balance due.

■ When White quitclaimed her interest in the property to Chandler, she expressly reserved her rights to "redeem and reclaim" her brother's interest as set forth in the Trust Agreement. Robert quitclaimed his interest to Adams without any reservation. A quitclaim deed transfers whatever legal and equitable interests the grantor may hold in the property involved. ORS 93.865(2). As a result of these deeds, White continues to own her equitable title to Robert's half

interest, while Adams owns the legal title.[3] What the Simpsons purchased at the sheriff's sale, thus, was the right to receive the legal title to White's half interest, subject to Adams' lien, provided that *neither* White nor her assignee exercised any right of redemption.[4] Because of our resolution of the other issues, we do not need to decide the effect on the title to the property if the Simpsons pay Adams' lien.

■ Because the sheriff did not sell Robert's half interest in the property, and because White retained her right to purchase that interest, the trial court erred in quieting title in the entire property in the Simpsons, subject only to Adams' lien. It also erred in dismissing Chandler's claims, as a sanction for her failure to appear at the deposition, without entering appropriate findings of fact and explaining why dismissal was just under ORCP 46 B(2)(c), including finding wilfulness, bad faith, or similar fault on Chandler's part. *Pamplin v. Victoria*, 319 Or 429, 436-37, 877 P2d 1196 (1994).[5]

The remaining issues concern the effect of Chandler's attempt to redeem the property.[6] Chandler's right to redeem arises from ORS 23.560(1):

"The mortgagor or judgment debtor whose right and title were sold, or the heir, devisee or grantee of the mortgagor or judgment debtor, who has acquired by inheritance,

---

[3] The purchaser at an execution sale acquires an equitable estate that is subject to being defeated by a proper redemption. The legal title remains in the judgment debtor (in this case White or her assignee) until the time for redemption passes, when the sale becomes absolute. *Haskin et al v. Greene*, 205 Or 140, 151, 286 P2d 128, 286 P2d 137 (1955); *see also* ORS 23.560(1).

[4] Under the Trust Agreement, the balance was due on January 1, 1995. The record does not reveal what actions, if any, White or Adams has taken with regard to the outstanding balance.

[5] If the Simpsons renew their motion for sanctions on remand, the court should also consider whether, when Chandler failed to appear, there was an effective order requiring her to do so. The court did not enter a written order embodying its May 7, 1993, ruling until August 4, after the date for the deposition. *See* ORS 3.070; *Clark v. Auto Wholesale Co., Inc.*, 237 Or 446, 448, 391 P2d 754 (1964) (order not signed in open court is not effective until filed); *Conley and Conley*, 97 Or App 134, 137, 776 P2d 860 (1989) (statement from bench is not order until appears in written order).

[6] Because the court had previously dismissed Chandler's claims, it did not rule on her right to redeem. However, White's asserted independent right to redeem is untimely unless Chandler's attempt to redeem is still viable. We must therefore consider the effect of Chandler's actions in order to decide the issues that White raises.

devise, deed, sale, or by virtue of any execution or by any other means, the legal title to the property sold, may, at any time within 180 days after the date of sale, redeem the property; provided that a transfer of the judgment debtor's interest in the property, either before or after the sale, shall preclude the judgment debtor from the right to redeem unless the proceeds from the sale are insufficient to satisfy the judgment, in which event the judgment debtor shall have the right to redeem at any time within 10 days after the 180 days allowed for redemption, and not otherwise."

The price for redemption is the total of the purchase money and the purchaser's necessary expenses, including taxes, expenditures to prevent waste, and prior liens, less the rents and profits of the property, together with appropriate interest. ORS 23.560(2), (3). In order to determine the correct amount, the judgment debtor or the judgment debtor's assignee may give 10 days written notice to the purchaser to render an accounting for rents and other profits from the property. The purchaser must then file a verified accounting with the sheriff, including both the amounts that the purchaser claims as liens on the property and the amounts of the rents and other profits that the purchaser received. If the judgment debtor, within five days, files written objections to the accounting, the sheriff must transmit the papers relating to the sale and redemption to the circuit court for a summary determination of the correct amount. ORS 23.560(3), (4). If no party redeems in the statutory manner within the statutory period, the sale becomes absolute when the sheriff makes a final conveyance to the purchaser. ORS 23.600.

In this case, Chandler gave the proper notice under ORS 23.560(4). On May 6, within the 10-day period, Janice Simpson filed an *unverified* accounting of amounts that the Simpsons claimed would be due on redemption. The sheriff did not send that accounting to Chandler in Alaska until May 8; Chandler did not receive it until May 13. She responded on the same date with her objections, specifically objecting to the lack of verification. Also on that day, the sheriff gave the first sheriff's deed to the Simpsons.

We do not need to decide whether Chandler's objections to the Simpsons' accounting were timely, because the Simpsons did not provide an accounting that complies with

the statute. The statute does not permit an unverified statement to be the basis for a judicial determination of the amount necessary to redeem. Chandler did not waive this irregularity but immediately objected to the lack of verification. *Cf. Kirk et al v. Rose v. Woods et ux*, 218 Or 593, 597-98, 346 P2d 90 (1959) (failure to object to formal defects in notice of redemption constituted a waiver of them). Under ORS 23.560(4), the verified accounting is the foundation for the court's determination of the amount necessary for redemption. The effect of the Simpsons' failure to provide a verified accounting is that the time for Chandler to redeem has not yet expired.[7] As a result, White's opportunity to redeem has not yet arisen. "[W]hen an accounting becomes necessary under the statute the time for redemption is extended until the matter is finally disposed of upon appeal." *Haskin*, 205 Or at 158-59; *see also Alpha Corporation v. McCredie*, 157 Or 88, 94-95, 70 P2d 46 (1937).[8]

█    The trial court granted summary judgment to the Simpsons on White's claim on the ground that White was without standing to seek to redeem because she had conveyed her right to do so to Chandler. White asserts that, despite that conveyance, she retains a right to redeem under ORS 23.560(1), because the execution sale did not fully satisfy the judgment against her. ORS 23.560(1) provides that, in that situation, a judgment debtor who has conveyed the legal title before or after the execution sale retains a limited right to redeem, exercisable during the 10 days after the 180 days and not otherwise.

█ █ This provision was originally adopted in 1917, Or Laws 1917, ch 352, § 2, and has never been construed. Because the limited right to redeem exists only in sales that do not fully satisfy the judgment debtor's obligation on the judgment, the apparent purpose is to permit the judgment debtor to recover the property if the judgment debtor thinks that it is worth more than the price paid at the execution sale.

---

[7] The circuit court has not had an occasion to determine the amount that is necessary to redeem. The requirement of ORS 23.560(4) that the redemptioner post a bond as a condition of appealing is therefore irrelevant to this case.

[8] This appeal, of course, will not finally dispose of the matter; rather, we simply send the case back so that the Simpsons may provide a verified accounting that will provide the basis for the remaining steps that the statute describes.

Redemption will make that additional value again available for payment of the judgment. In 1917, as at present, redemption by a judgment debtor or the assignee of a judgment debtor restored the lien of the judgment to full effectiveness to the extent that it had not been paid, *Franklin v. Spencer*, 309 Or 476, 789 P2d 643 (1990); *Flanders v. Aumack*, 32 Or 19, 51 P 447 (1897). Thus, permitting the judgment debtor to redeem after everyone else has had an opportunity to do so will give the judgment debtor another chance to make sure that the property is not sold for less than its true value and that it will provide the maximum benefit for the judgment debtor.

The opportunity for White to redeem under the statute has not yet occurred, because it only arises after the 180 days for Chandler to redeem have expired, and the Simpsons' failure to provide a verified accounting has extended that period. The trial court erred in holding that White did not have standing to seek to redeem. Because the time for her to redeem has not yet occurred, the Simpsons' alternative argument that she lost that right by failing to attempt to redeem is without merit.

Reversed and remanded.