477

Argued and submitted August 21, 2014, vacated and remanded
December 16, 2015

Sharon HUGHES,
Personal Representative of
the Estate of Robert L. Hulen,
and Kenneth O. Paddock,
*Plaintiffs-Appellants,*

*v.*

Tina EPHREM
and all Persons or Parties Unknown
Claiming any Right, Title, Lien, or Interest
in the Property Described in the Complaint,
*Defendants,*

*and*

Rita EPHREM,
a Person or Party Claiming an Interest
in the Property Described in the Complaint,
*Defendant-Respondent.*

Multnomah County Circuit Court
120025302E; A153439

365 P3d 613

Erin K. Olson argued the cause for appellants. With her on the briefs was Law Office of Erin K. Olson, P.C.

James N. Esterkin argued the cause and filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

Plaintiffs obtained judgments against defendant's daughter and then sought to enforce those judgments by execution against real property to which the daughter held legal title. Plaintiffs were the high bidders at a sheriffs' sale of that property, and they obtained a certificate of title. Based on that certificate, they filed this forcible entry and detainer (FED) action after defendant refused to vacate the premises. Defendant responded to the FED complaint by alleging that she had a right to continued possession based on a life estate that was created when she and her late husband conveyed title to their daughter by way of a quitclaim deed. The trial court agreed with defendant, ruling that defendant and her late husband, who were members of a Romani clan, had not intended for the beneficial interest in the property to pass to their daughter until after they had died, in accordance with traditional Romani inheritance practices. Thus, the court concluded that defendant had retained an equitable interest in the property, notwithstanding the unqualified nature of the quitclaim deed.

On appeal, plaintiffs challenge the trial court's conclusion that defendant had an equitable interest in the property that was sufficient to defeat plaintiffs' right to possession. For reasons that we will explain, we conclude that the trial court failed to make a critical factual finding on an issue to which it alluded but that it did not conclusively resolve in its ruling: defendant and her late husband's motives in deeding the property to their daughter. If, as plaintiffs' evidence suggests, the property was transferred to avoid creditors—an objective that presumably would involve an immediate rather than a future transfer of the beneficial interest in the property—that fact would undermine the trial court's finding that defendant and her late husband had not intended the quitclaim deed to transfer their ownership of the property, as well as its ultimate conclusion on the equitable defense. Because the trial court is in the best position to resolve that factual question, we vacate and remand the judgment for further proceedings.

# I. BACKGROUND

## A. *The FED Complaint*

The facts immediately preceding the filing of this FED action are undisputed. Plaintiffs, who were the victims of theft by Tina Ephrem, obtained judgments against her for elder abuse.[1] Tina held title to property located at 3345 NE 126th Avenue in Portland, Oregon, and plaintiffs thereafter sought a writ of execution from the circuit court directing the sheriff to sell that property to satisfy the judgments. Tina's mother, Rita Ephrem, who is the defendant in this case, objected to the proposed sale and, at a hearing, informed the circuit court that she had a possessory interest in the property that was not subject to the sale. The circuit court ordered an execution sale by the sheriff, but it limited the sale to Tina's interest in the property.

At the sheriff's sale, plaintiffs were the highest bidders and obtained a sheriff's certificate of judicial sale. The certificate stated that plaintiffs had purchased "all interest of Tina Ephrem in the real property." Plaintiffs subsequently commenced this FED action when defendant refused to vacate the premises or pay rent pending the expiration of the redemption period. In their complaint, plaintiffs alleged that they were entitled to possession under ORS 18.946(1), which provides that "the purchaser of real property at an execution sale is entitled to possession of the property from the date of sale until a redemption of the property, if any." Defendant then filed an answer in which she alleged that "Tina Ephrem held apparent legal title to the premises, and [defendant] is entitled to a resulting trust in her favor for a life estate in the property. Defendant further alleges that the deed to Tina Ephrem retained a life estate in the property."

## B. *Trial Proceedings*

At the beginning of the bench trial, the parties stipulated to the admission of certain exhibits, including the

---

[1] Plaintiffs named Tina Ephrem and all others claiming a right of possession in the property. Because Rita Ephrem, Tina's mother, is the only defendant who has appeared, we refer to her as "defendant" in this opinion. For clarity, we sometimes refer to members of the Ephrem family by their first names.

sheriff's certificate of sale, and also agreed that plaintiffs' evidence made out a *prima facie* case for possession of the property under FED laws. Through a colloquy with counsel, the trial court then narrowed the case to two overarching issues: (1) whether the existence of a resulting trust is something that could be raised as a defense in an FED action; and (2) assuming that it could, whether defendant proved that defense by clear and convincing evidence, which the parties agreed was her burden.

The trial court ruled on the first issue early in the proceedings, concluding that "the defense has the right to seek a resulting living trust within the confines of this FED proceeding." Defendant then proceeded to put on her evidence, which, for purposes of our disposition, we need only summarize generally. Defendant offered evidence that she and her late husband, Lee Ephrem, were traditional members of the Kalderash, a subgroup of the Roma ethnic group. They had six daughters together, the youngest of whom was Tina. In 1976, the Ephrem family moved into the home at 3345 NE 126th Avenue, and defendant and Lee acquired title to the property in 1987.

In November 1990, when Tina was age 15, Lee and defendant executed and recorded a quitclaim deed in which they conveyed to Tina "all of [their] right, title and interest" in 3345 NE 126th Avenue, to "have and to hold the same unto the said grantee and grantee's heirs, successors and assigns forever." A year and a half later, Lee and defendant sought and obtained a conservatorship for Tina. The petition stated that appointment of a conservator was necessary "because Petitioners transferred real property to the minor child on November 26, 1990 upon advice of an attorney that minors could hold property without any further proceedings."

Defendant and plaintiffs offered conflicting theories about why that transfer to Tina occurred. Defendant testified that she and Lee had conveyed the property to Tina in accordance with the Romani custom that property passes to the youngest child upon the death of the parents, but that Tina would not have control of the property during their lifetimes. Defendant also offered testimony from Dr. Carol

Silverman, an anthropologist and expert in the subject of the Romani culture, to describe how property is passed among traditional Romani. Silverman explained that the youngest child in a Romani family has a special relationship with the parents: The youngest child customarily receives property upon the death of the parents, but is also expected to care for the parents if they become infirm.

Silverman testified that the Romani avoid the American legal system when possible and typically do not execute wills to pass property. Deeds, if executed, are for the security of the youngest child, but the Romani understanding is that, regardless of the deed, "it is the parents' house while the parents are alive, because age and respect, and ownership go along the hierarchy of age."

Plaintiffs, meanwhile, offered exhibits and elicited testimony on cross-examination to suggest that Lee and defendant had a different purpose for the quitclaim deed than to provide for Tina's future inheritance. Plaintiffs offered evidence that, at the time of the conveyance in November 1990, Lee and defendant were in financial distress, including from trust deeds for two unsatisfied loans to purchase the property; a federal tax lien in the amount of $11,330.51, which was recorded by the Internal Revenue Service (IRS) in 1989; a subsequent IRS tax lien, recorded in 1991, in the amount of $105,154.70 for the tax period ending December 31, 1987; unpaid state taxes; a $22,000 loan from Beneficial Oregon, Inc., which was secured by a deed of trust to the property that was recorded June 21, 1990; and unpaid medical bills of more than $10,000 for services rendered in 1985. Plaintiffs also produced evidence that Lee's father had deeded property to his youngest son but had done so by conveying title as joint tenants with a right of survivorship, not with a quitclaim deed as Lee and defendant had done.

C.  *Trial Court Ruling*

After taking the matter under advisement, the trial court issued a letter opinion that ruled in defendant's favor. The opinion stated that "[t]he only issue for me to decide is whether the law and the evidence support the formation of an equitable device, such as a resulting trust which creates

the equivalent of a life estate in the property for the benefit of [defendant]." The court then explained its reasoning:

"I have no doubt that [defendant Rita], Lee and Tina Ephrem all understood and believed that the house would go to Tina when both Lee and Rita had died and that Lee and Rita would be able to live in the house so long as they lived. Obviously, it would have been good if Lee and Rita would have followed the simple rule of preparing a deed which actually said that. Instead, they decided to use a deed which transferred the property to their daughter immediately and without restriction. They may have had an additional motive to transfer the property to Tina: to avoid having the property available to an IRS lien.

"The relationship between parents and child is viewed as confidential under the law. Gifts must be established by clear and convincing evidence. There was no such evidence demonstrating that the deed from parents to child represented a present (in time) gift, as compared to an intended gift for the future, other than the quit-claim nature of the deed itself. There was no evidence demonstrating that the parents intended to divest themselves of the ownership, responsibility and benefits of the property, other than the transfer of title.

"I find and conclude that Lee and Rita did not intend to convey the property to Tina. Therefore, I conclude that the circumstances surrounding the execution of the quit-claim deed support the existence of an equitable remedy, such as a life estate, resulting trust or mandatory reconveyance, any of which require me to disallow the plaintiffs' claim for relief. Judgment is against the plaintiffs and in favor of the defendant."

The trial court entered a judgment consistent with its letter opinion, and this appeal followed.

## II. ANALYSIS

On appeal, plaintiffs argue that the trial court erred in ruling in defendant's favor because (1) her equitable defense did not constitute a defense to any of the essential elements of an FED claim; and (2) defendant failed to carry her burden to establish her affirmative defense. We address each of those contentions in turn.

Plaintiffs' initial argument is that, even assuming defendant could prove an equitable interest in the property, it would not constitute a defense to plaintiffs' right to possession of the property for purposes of an FED action, because the defense did not refute any of the essential elements that plaintiffs were required to prove. We review the trial court's ruling on that legal question for errors of law. *E.g., 2606 Building v. MICA OR I Inc.*, 334 Or 175, 182-85, 47 P3d 12 (2002) (deciding, as a matter of law, "whether a lessee may raise an equitable defense based on mistake in the late payment of rent in a forfeiture action").

Plaintiffs commenced this FED action pursuant to ORS 105.110, which provides:

"When a forcible entry is made upon any premises, or when an entry is made in a peaceable manner and possession is held by force, the person entitled to the premises may maintain in the county where the property is situated an action to recover the possession of the premises in the circuit court or before any justice of the peace of the county."

A complaint filed pursuant to ORS 105.110 is "sufficient" if it states the following:

"(1)   A description of the premises with convenient certainty;

"(2)   That the defendant is in possession of the premises;

"(3)   That, in the case of a dwelling unit to which ORS chapter 90 [the Residential Landlord and Tenant Act] does not apply,[2] the defendant entered upon the premises with force or unlawfully holds the premises with force; and

"(4)   That the plaintiff is entitled to the possession of the premises."

ORS 105.123. For purposes of ORS 105.110 and ORS 105.123, "unlawful holding by force" includes the situation in which "the person in possession of a premises remains in possession after the time when a purchaser of the premises is entitled to possession in accordance with the provisions of

---

[2] The parties agree that the Residential Landlord and Tenant Act does not apply in this case.

ORS 18.946." ORS 105.115(1)(d). That cross-referenced statute, ORS 18.946, concerns purchasers of property at an execution sale. It provides that "the purchaser of real property at an execution sale is entitled to possession of the property from the date of sale until a redemption of the property, if any." ORS 18.946.

According to plaintiffs, defendant stipulated that plaintiffs had put on a *prima facie* case, which included a stipulation that she was unlawfully holding the premises by force within the meaning of ORS 105.115(1)(d), as a person who remained in possession of the premises after plaintiffs purchased the property at a sheriff's sale. In plaintiffs' view, "their entitlement to possession is defined by law to exist upon the satisfaction of the provisions of ORS 18.946, and plaintiffs met those requirements, as [defendant] stipulated."

Plaintiffs overstate the effect of defendant's stipulation. As the trial court correctly recognized, defendant stipulated that, *but for the existence of a resulting trust,* plaintiffs could prove that they had a right to possession and that defendant was unlawfully withholding the premises by force. In authorizing the sheriff's sale, the circuit court had expressly provided that only Tina's interest in the property was being sold, and the sheriff's certificate of sale reflects that the sale was "of all interest of Tina Ephrem in the real property." Thus, as purchasers at the sheriff's sale, plaintiffs purchased whatever interest Tina, the debtor, had in the property. *See* ORS 18.860(1)(a) (providing that a writ of execution may direct a sheriff to "[l]evy on and sell *real property of the judgment debtor* and deliver the proceeds to the court for application against amounts owing on a money award" (emphasis added)); *see generally White v. Simpson,* 140 Or App 147, 154, 915 P2d 1004 (1996) (explaining that sheriff's sale of property did not extend to an interest that had never been conveyed to the judgment debtor by her brother; "[a]t the time of the sheriff's sale, thus, the only legal interest that [the judgment debtor] held, and therefore the only interest that the sheriff sold, was a half interest in the property as a tenant in common with [the judgment debtor's brother]"); 33 CJS *Executions* § 468 (2015) ("If the sale is of a remainder or reversion, the sheriff's deed is as effectual to pass the title as is the deed of the remainderman

or reversioner; the sale is subject to the terms of the instrument creating the estate and to the right of the life tenant to possess and control the property during life." (Footnotes omitted.)).

In this case, defendant asserts that the interest that plaintiffs purchased at the sale does not include a present possessory interest, because defendant retained an equitable interest in the property notwithstanding the conveyance to Tina. That is, defendant contends that the conveyance to Tina was intended to pass the beneficial interest in the property only upon defendant's death, not at the time that the quitclaim deed was executed in 1990, thereby resulting in a life estate under the resulting trust doctrine. That defense, if proved, would defeat plaintiffs' right to possession of the premises as a result of the sheriff's deed, because defendant would have held a possessory interest as a result of a life estate, not as a tenant at sufferance, after the execution sale.[3] *Cf. Bunch v. Pearson*, 186 Or App 138, 142, 62 P3d 878, *rev den*, 335 Or 422 (2003) (holding that, "[b]ecause defendant entered the property as an equitable owner under the land sale contract, her entry cannot be said to be unlawful or by force" for purposes of an FED action); *Schmidt v. Hart*, 237 Or App 412, 421, 241 P3d 329 (2010), *rev den*, 350 Or 130 (2011) (explaining that a party to an FED proceeding was "entitled in the FED proceeding to present defenses that related to her right to possession" (citing *Fry v. D.H. Overmyer Co., Inc.*, 269 Or 281, 303, 525 P2d 140 (1974))). Thus, the trial court correctly allowed defendant to raise her equitable defense in the FED proceeding.

We turn, then, to plaintiffs' contention that defendant failed to establish that defense. Plaintiffs argue that we have discretion to review *de novo* the trial court's factual findings underlying the ruling on that defense, because the defense is equitable in nature; and, they urge us to exercise that discretion because the trial court's factual findings "were essential to the trial court's ruling." *See* ORS

---

[3] Plaintiffs do not develop any argument that ORS 18.946 somehow confers, upon purchasers at an execution sale, possessory rights beyond those of the judgment debtor, and we are not aware of anything in ORS chapters 18 or 105 that would suggest that result.

19.415(3)(b) ("Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."); ORAP 5.40(8)(d)(iv) (listing, as one of the relevant criteria for exercising *de novo* review, "[w]hether the factual finding(s) that the appellant requests the court find anew is important to the trial court's ruling that is at issue on appeal (*i.e.*, whether an appellate determination of the facts in appellant's favor would likely provide a basis for reversing or modifying the trial court's ruling)"). Defendant, on the other hand, submits that "[t]he instant proceeding is an action at law and the decision of the trial judge may be reviewed to determine whether any evidence was presented which support's the Court's factual findings."

We agree that the court's ruling on the equitable defense is eligible for *de novo* review. *See Vukanovich v. Kine*, 268 Or App 623, 633, 342 P3d 1075, *adh'd to as modified on recons*, 271 Or App 133, 349 P3d 567 (2015) (explaining that defenses tried to the court were "equitable in character and eligible for *de novo* review"). However, we decline to engage in that type of review because we conclude that the trial court failed to resolve a critical factual dispute, which that court is better positioned to decide in the first instance.

In her answer to the FED action, defendant asserted that she "is entitled to a resulting trust in her favor for a life estate in the property." A resulting trust arises when property "is transferred under circumstances that give rise to an inference that the person who made the transfer *does not intend the transferee to take a beneficial interest in the property.*" *Connall v. Felton*, 225 Or App 266, 270-71, 201 P3d 219, *rev den*, 346 Or 257 (2009) (emphasis added). That is, a resulting trust "exists 'by implications of law' and is presumed always to have been contemplated by the parties, 'the intention as to which is to be found in the nature of their transaction, but not expressed in the deed or instrument of conveyance.'" *Id.* at 271 (quoting *Shipe et al v. Hillman*, 206 Or 556, 563-64, 292 P2d 123 (1956)). The party asserting the existence of a resulting trust bears the burden of proving, by

clear and convincing evidence, that property conveyed by an absolute deed was, in fact, conveyed in trust. *Fry*, 269 Or at 292 (explaining that a deed absolute on its face "is what it purports to be unless and until proved otherwise by clear and convincing evidence").

As described above, the parties offered competing evidence about the circumstances under which defendant and her late husband quitclaimed their interest in the Ephrem family home to their daughter, Tina. Defendant offered evidence of the cultural practice among Romani whereby the youngest child inherits property, whereas plaintiffs put on evidence that the property was more likely deeded for financial reasons—namely, to avoid creditors, including the IRS. The trial court ultimately found defendant's evidence to be persuasive, concluding that

> "[t]here was no such evidence demonstrating that the deed from parents to child represented a present (in time) gift, as compared to an intended gift for the future, other than the quit-claim nature of the deed itself. There was *no evidence* demonstrating that the parents intended to divest themselves of the ownership, responsibility and benefits of the property, other than the transfer of title."

(Emphasis added.)

Contrary to the trial court's ruling, there was, in fact, evidence presented that defendant and her husband intended to divest themselves of ownership, responsibility, and benefits of the property, and the trial court alluded to that evidence in an earlier part of its ruling. The trial court stated that defendant and her husband "may have had an additional motive to transfer the property to Tina: to avoid having the property available to an IRS lien."

If defendant and her husband had intended to protect the property from an IRS tax lien, the existence of that fact would bear on, and perhaps undermine, the trial court's ultimate finding that the quitclaim deed was not intended to pass a beneficial interest in the property. To avoid an IRS lien, they presumably would have intended to pass *all* of their property rights—not simply bare legal title—because an IRS lien would attach to any rights they retained in the

property, including a life estate. *See* 26 USC § 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon *all property and rights to property, whether real or personal, belonging to such person.*" (Emphasis added.)); *see also United States v. Baran,* 996 F2d 25, 29 (2d Cir 1993) (involving calculation of an IRS tax lien "not on the entire property, but only on the life estate," and explaining that "[w]hen the property was divided into a life interest and a remainder, the lien continued against both interests, and the lienholder became entitled to proceed against either interest").[4]

Likewise, if defendant and her husband intended to conceal the property from creditors without actually transferring all of their property rights, that fact, too, would undermine the trial court's ruling on the equitable defense of a resulting trust. A resulting trust, as an equitable remedy, will not lie where the party invoking the court's equitable powers has unclean hands, including intentionally defrauding creditors as a result of the conveyance at issue. *See Smith v. Barnes,* 129 Or 138, 159, 276 P 1086 (1929) (considering, in the context of a plaintiff's entitlement to a resulting trust for property, whether the plaintiff had unclean hands and concluding that "we do not believe that we would be justified in holding that the plaintiff's request for a conveyance to the defendant was intended as an act to defraud his creditors or the prosecuting officials"); *Osborne v. Nottley,* 206 Or App 201, 205, 136 P3d 81, *rev den,* 341 Or 579 (2006) ("A conveyance designed 'for the purpose of

---

[4] Although there might be a way to reconcile the trial court's ultimate legal conclusion with the court's statement that the Ephrems might have deeded the property to avoid an IRS lien—perhaps by assuming that the trial court implicitly found that the Ephrems erroneously believed that a transfer of legal title alone would accomplish that objective—we do not attempt to do so here because it appears from the trial court's express findings—particularly, the court's statement that the record included "no evidence" that the Ephrems intended to transfer the beneficial interest—that the court did not appreciate the relevance of the evidence that the Ephrems quitclaimed the property to avoid creditors. We therefore remand the case to the trial court for further factfinding rather than attribute to the court any implicit findings about whether the Ephrems conveyed the property in order to avoid creditors.

placing property beyond the reach of creditors' constitutes inequitable conduct sufficient to bar relief under the unclean hands doctrine." (Quoting *Thompson v. Spint*, 247 Or 484, 485, 430 P2d 1014 (1967).).[5]

The trial court therefore erred in concluding that defendant had proved the existence of a resulting trust without first deciding defendant and her husband's intent in deeding the property to their daughter—specifically, what they intended to accomplish by way of the quitclaim deed. The trial court's ruling expressly leaves open the possibility that the Ephrems intended to defraud creditors, and the ruling does not otherwise explain why the Ephrems chose, in 1990, to transfer the property at all, let alone using a quitclaim deed. Because the court's factual findings are insufficient to support the imposition of a resulting trust, and because that court is in the best position to evaluate the credibility of the witnesses and weigh the evidence accordingly, we vacate and remand the judgment. *See Pereida-Alba v. Coursey*, 356 Or 654, 671-74, 342 P3d 70 (2015) (remanding for the trial court to make the pertinent factual finding and apply the correct legal standard in the first instance).

Vacated and remanded.

---

[5] The common law is well established with regard to whether a resulting trust can rescue a party from an effort to defraud creditors. *See generally* Ronald Chester and George G. Bogert, *The Law of Trusts and Trustees*, § 463 (2015) ("[I]f A pays for land and has it conveyed by absolute deed to B, with the intent of evading A's creditors, the court will render A no aid in securing the enforcement of the resulting trust which would normally be implied for his benefit, but the creditors of A may take his equitable interest by resorting to the procedure required in such an instance in the particular jurisdiction." (Footnotes omitted.)). Because that doctrine is for the protection of the court, it can be invoked by the court on its own motion. *See Osborne*, 206 Or App at 205 ("The maxim [that a party seeking equitable relief must have clean hands] is applied for the protection of the court and not for the benefit of [one of the parties], who may in fact be equally affected with the improper transaction; thus, the trial court may invoke the doctrine on its own motion." (Internal quotation marks and citations omitted.)).