2013 UT App 53

# THE UTAH COURT OF APPEALS

ISAAC MCQUEEN,

*Plaintiff, Appellee, and Cross-appellant,*

*v.*

JORDAN PINES TOWNHOMES OWNERS ASSOCIATION, INC.,

*Defendant, Appellant, and Cross-appellee.*

Opinion
No. 20110312-CA
Filed February 28, 2013

Third District, Salt Lake Department
The Honorable Joseph C. Fratto Jr.
No. 070918316

John D. Morris and Jamie L. Nopper, Attorneys for Appellant
and Cross-appellee

Bruce A. Maak, Attorney for Appellee and Cross-appellant

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion,
in which JUDGE JAMES Z. DAVIS concurred.
JUDGE J. FREDERIC VOROS JR. concurred with opinion.

CHRISTIANSEN, Judge:

¶1      Defendant Jordan Pines Townhomes Owners Association, Inc. appeals the district court's grant of partial summary judgment in favor of plaintiff, Isaac McQueen. McQueen cross-appeals the district court's denial of his requested attorney fees. We affirm.

BACKGROUND[1]

¶2      Jordan Pines Townhomes Owners Association, Inc. (the Association) is a condominium association located in West Jordan, Utah. Ownership of a Jordan Pines condominium unit requires owners to sign a condominium declaration by which they agree to pay assessments to the Association. The assessments cover exterior and clubhouse maintenance, snow removal, common utilities, and other expenses. If the required assessments are not paid, the condominium declaration provides for the creation of a lien that may be enforced through foreclosure or sale in accordance with the law of "deeds of trust or mortgages or in any other manner permitted by law." In February 2006, McQueen purchased a condominium unit at Jordan Pines Townhomes and signed the required declaration. McQueen never actually occupied the unit and, instead, leased it out to several different tenants over a period of nineteen months.

¶3      At some point after he purchased the condominium unit, McQueen came to be in arrears on his assessment fees in the amount of $903.71.[2] The Association, acting through its attorney, initiated nonjudicial foreclosure proceedings on March 2, 2007, by recording with the office of the Salt Lake County Recorder a Notice of Lien against McQueen's unit. The Association later recorded a

_____

1. "Before we recite the facts, we note that in reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. We state the facts in this case accordingly." *Higgins v. Salt Lake Cnty.*, 855 P.2d 231, 233 (Utah 1993) (citations omitted).

2. The record is unclear as to the exact timing of McQueen's failure to pay his assessments. The Association alleges on appeal that McQueen paid only one assessment between August 2006 and September 2007.

Notice of Default, posted a published Notice of Sale by Public Auction, and set the auction for September 11, 2007. Exchange Properties, Inc., a company owned by J. Daniel Fox (collectively, Exchange), was the only bidder at the auction. Exchange purchased McQueen's unit for $3,312.76. The purchase amount included the assessment fees arrearage, interest, the cost of selling the unit, and attorney fees incurred in pursuing the foreclosure against McQueen's unit. Once the Association delivered the deed to the unit, Exchange evicted McQueen's tenants.

¶4      On December 31, 2007, McQueen filed suit against Exchange and the Association seeking to quiet title to the unit and to recover damages for slander of title. McQueen thereafter filed a motion for partial summary judgment, arguing as a matter of law that (1) the nonjudicial foreclosure procedure followed by the Association was ineffective and void, (2) McQueen remained the owner of the subject property, and (3) title to the subject property should be quieted in favor of McQueen. On January 4, 2009, the district court granted McQueen's partial summary judgment motion and determined that the Association did not appoint a qualified trustee to perform the nonjudicial foreclosure sale as required by section 57-8-20 of the Condominium Ownership Act, *see generally* Utah Code Ann. § 57-8-20(4) (LexisNexis 2010) (current version at *id.* § 57-8-44, -45 (Supp. 2012)), and the Trust Deed Act, *see generally id.* §§ 57-1-19 to -38 (2010 & Supp. 2012). Consequently, the court invalidated the sale of the condominium unit to Exchange and quieted title to the unit in McQueen.

¶5      McQueen next attempted to regain possession of his unit by contacting Exchange and counsel for the Association. When his efforts proved to be unsuccessful, McQueen filed an unlawful detainer action against Exchange and Exchange's tenants. The unlawful detainer action was tried before a different district court judge on April 6, 2009. The court took judicial notice of the prior partial summary judgment ruling and determined that McQueen was entitled to exclusive possession of the unit. Exchange did not

appeal this ruling. McQueen retook possession of his condominium in April 2009.

¶6      On May 26, 2009, McQueen filed a second amended complaint in the quiet title case. In addition to the claims not resolved by the court's previous partial summary judgment ruling, the second amended complaint alleged that Exchange had committed waste and that McQueen was entitled to attorney fees. Following a bench trial in March 2010, the court entered final judgment against the Association and issued findings of fact and conclusions of law. Relevant to this appeal, the court ruled that McQueen was not entitled to attorney fees as a matter of law and dismissed that claim with prejudice. The court also confirmed its prior partial summary judgment ruling declaring the foreclosure procedure as ineffective and void. Both parties appeal.


ISSUES AND STANDARDS OF REVIEW

¶7      On appeal, the Association argues that the district court erred as a matter of law in determining that the nonjudicial foreclosure proceeding conducted by the Association was ineffective and void because the Association failed to appoint a qualified trustee to conduct the nonjudicial foreclosure sale pursuant to the Condominium Ownership Act, *see id*. § 57-8-20(4) (2010); *see generally id*. § 57-8-1 to -41, and the Trust Deed Act, *see id*. §§ 57-1-19 to -38 (2010 & Supp. 2012). "Because summary judgment is granted as a matter of law, we review for correctness." *Harding v. Atlas Title Ins. Agency, Inc.,* 2012 UT App 236, ¶ 5, 285 P.3d 1260 (citation and internal quotation marks omitted). Whether a qualified trustee must be appointed to conduct a nonjudicial foreclosure or sale is a question of statutory interpretation. "'The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion.'" *Ellison v. Stam,* 2006 UT App 150,

¶ 16, 136 P.3d 1242 (quoting *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998)).[3]

¶8      On cross-appeal, McQueen contends that the district court erred in ruling that the Association is not liable for certain of McQueen's attorney fees based upon the condominium declaration and Utah Code section 78B-5-826 or as a result of the consequential damages he incurred in pursuing clear title to the condominium unit. "We review the denial of an award of attorney fees as a matter of law for correctness." *PC Crane Serv., LLC v. McQueen Masonry, Inc.*, 2012 UT App 61, ¶ 23, 273 P.3d 396.


## ANALYSIS

### I. The Condominium Ownership Act and the Trust Deed Act Both Require that a Qualified Trustee Be Appointed To Conduct a Nonjudicial Foreclosure or Sale.

A. The Relevant Statutory Law

¶9      The question presented by the Association's appeal is how much of the Trust Deed Act, *see* Utah Code Ann. §§ 57-1-19 to -46 (LexisNexis 2010 & Supp. 2012), is incorporated into the Condominium Ownership Act, *see id.* §§ 57-8-1 to -41, by the latter's

---

3. McQueen argues that collateral estoppel and acceptance of or acquiescence to the district court's ruling should bar the Association's appeal. Because we agree that the district court correctly ruled that Utah law requires the appointment of a qualified trustee, it is unnecessary for us to examine either of these arguments. *See generally State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989) (concluding that appellate courts "need not analyze and address in writing each and every argument, issue, or claim raised" and should "expeditiously focus judicial resources and energy on those [issues which are] critical or outcome-determinative").

provision that a lien for nonpayment of a condominium unit assessment may be enforced through foreclosure or sale according to the law of deeds of trust or mortgages. *See id.* § 57-8-20 (4)(a)–(b) (2010). The relevant portion of the Condominium Ownership Act is Utah Code subsection 57-8-20(4)(a)–(b), which was the controlling statute at the time litigation commenced in this case. *See id.*[4] Under this statute, nonpayment of a condominium unit assessment resulted in a lien in favor of the management of the condominium association. *See id.* That is,

> if any unit owner fails or refuses to pay an
> assessment when due, that amount constitutes a lien

---

4. The Utah Legislature repealed this section of the Condominium Ownership Act in May 2011 and replaced it with Utah Code section 57-8-44 and -45. *See* Utah Laws 2011, ch. 355, § 45, eff. May 10, 2011. During oral argument before this court, counsel for McQueen moved to strike the portions of the Association's reply brief which address how the "2011 amendments [to the Condominium Ownership Act] came to say what they say." We agree that this section of the Association's reply brief inappropriately discusses the Association's and others' efforts in seeking amendment to the statute in 2011. Proper examples of legislative history include legislative floor debates, committee reports, transcripts of discussions at committee hearings, conference committee reports, analyses of bills by legislative counsel and administrative departments, amendments accepted and rejected, and prior and subsequent legislation dealing with the same subject matter. *See* Jose R. Torres & Steve Windsor, *State Legislative Histories: A Select, Annotated Bibliography*, 85 Law Libr. J. 545, 546 (1993). In short, legislative history "encompasses almost any relevant and reliable evidence relating to events that influenced passage of the legislation." *Id.* at 547. The Association's reply brief relies on the anecdotal experiences of a few individuals involved in the 2011 attempts to amend the statute. Accordingly, we grant McQueen's motion to strike.

on the interest of the owner in the property, and upon the recording of notice of lien by the manager or management committee it is a lien upon the unit owner's interest in the property prior to all other liens and encumbrances . . . .

*Id.* § 57-8-20(4)(a).[5]

¶10    Based upon McQueen's arrearage, there is no dispute the Association had a rightful lien against McQueen's condominium unit in this case. Rather, the parties disagree about the procedure undertaken by the Association to foreclose on that lien. The statute also sets forth the procedure for enforcing an assessment lien:

> The lien for nonpayment of an assessment may be enforced by sale or foreclosure of the unit owner's interest by the manager or management committee. The sale or foreclosure shall be conducted in the same manner as foreclosures in deeds of trust or mortgages or in any other manner prescribed by law.

*Id.* § 57-8-20(4)(b). As noted in the Condominium Ownership Act, the sale or foreclosure of an assessment lien must be conducted in the same manner as foreclosures involving trust deeds, mortgages, or any other method permitted by law. Utilization of a trust deed in a foreclosure allows property to be nonjudicially foreclosed, often making a trust deed the preferred option over the traditional mortgage foreclosure process that requires judicial involvement. Nonjudicial trust deed foreclosures and sales are governed by the Trust Deed Act. Accordingly, we turn to the specific requirements of the Trust Deed Act to determine the appropriate procedure for enforcing an assessment lien by nonjudicial foreclosure.

---

5. In this opinion, we use the term "assessment lien" to refer to a lien for nonpayment of a condominium unit assessment pursuant to section 57-8-20.

¶11    Relevant to our analysis is section 57-1-19(3), which defines a trust deed as a device that "convey[s] real property to a trustee in trust to secure the performance of an obligation of the trustor or other person named in the deed to a beneficiary." *Id.* § 57-1-19(3) (2010). Additionally, section 57-1-21 is applicable here and states that the power of sale "may only be exercised by the trustee of a trust deed if the trustee is qualified under Subsection (1)(a)(i) or (iv)." *Id.* § 57-1-21(3). Notably, section 57-1-21(4) mandates that

> [a] trust deed with an unqualified trustee or without a trustee shall be effective to create a lien on the trust property, but the power of sale and other trustee powers under the trust deed may be exercised only if the beneficiary has appointed a qualified successor trustee under Section 57-1-22.

*Id.* § 57-1-21(4). The Condominium Ownership Act requires that nonjudicial assessment lien foreclosures and sales be carried out pursuant to the requirements set forth in the Trust Deed Act. The Trust Deed Act, in addition to other procedural requirements like proper notice, requires the creation of a trust relationship and the appointment of a qualified trustee.[6] The extent to which these requirements apply to the Condominium Ownership Act is the subject of the Association's appeal.

---

6. We read the concurring opinion to require the conveyance of title to a condominium unit to a trustee in trust as a necessary prerequisite to the exercise of a power of sale by the manager or management committee of a condominium association. This may be true. Regardless, we do not address the concern raised by the concurrence because resolution of that issue is not necessary for our determination. Here, we are concerned only with the validity of the Association's foreclosure procedure, as opposed to the requisite procedures leading up to the foreclosure.

B. Plain Language Interpretation of the Condominium Ownership Act and the Trust Deed Act

¶12    Following its grant of partial summary judgment at oral argument, the district court ruled that the Association had failed to comply with the statutory requirements for a nonjudicial foreclosure of an assessment lien. Under the district court's interpretation of the Condominium Ownership Act and Trust Deed Act, a party must appoint a qualified trustee if it wishes to enforce an assessment lien via foreclosure or sale without judicial intervention. Because the Association failed to appoint a qualified trustee, the court declared as ineffective and void the foreclosure sale of McQueen's condominium.

¶13    The Association argues on appeal that the district court incorrectly interpreted subsections 57-8-20(a) and (b) and ignored the superiority of the Condominium Ownership Act over the Trust Deed Act where the two statutory provisions conflict.[7] The Association attacks the district court's reliance on the language in section 57-8-20(4)(b) that requires assessment lien foreclosures to be conducted in the "same manner" as those for trust deeds. *See id.* § 57-8-20(4)(b). This phrase, according to the Association, refers only to sections 57-1-23 through 57-1-29 of the Trust Deed Act, which address the procedures applicable to a permitted sale, such as those relating to timing and notice. *See id*. §§ 57-1-23 to -29 (2010 & Supp. 2012). The Association insists that the phrase, "same manner," does not refer to earlier sections of the statute that outline

---

7. The Association cites the following portion of the Utah Code in support of its argument that the Condominium Ownership Act supersedes the requirements contained in the Trust Deed Act: "The provisions of this chapter shall be in addition and supplemental to all other provisions of law, statutory or judicially declared, *provided that wherever the application of the provisions of this chapter conflict with the application of such other provisions, this chapter shall prevail*." Utah Code Ann. § 57-8-35(1) (LexisNexis 2010) (emphasis added).

a conveyance in trust with the power of sale and the appointment of a qualified trustee because the purpose behind the creation of a trust is to provide a security interest for the lender. *See id.* § 57-1-20 (2010) ("Transfers in trust of real property may be made to secure the performance of an obligation of the trustor or any other person named in the trust deed to a beneficiary."). The Association argues that because the security interest in assessment liens arises automatically under section 57-8-20(4)(a), there is no need to create a trust relationship and appoint a qualified trustee to pursue nonjudicial foreclosure of a condominium unit. To hold otherwise, according to the Association, would create a conflict between the two statutes, in which case the specific provisions of the Condominium Ownership Act prevail. *See id.* § 57-8-35(1).

¶14     In support of its position, the Association relies on the language in section 57-8-20(4)(b), which states that a foreclosure upon or a sale of a condominium unit need only be enforced by the "manager or management committee." Utah Code Ann. § 57-8-20(4)(b) (LexisNexis 2010) (current version at *id.* § 57-8-44, -45 (Supp. 2012)). According to the Association, imposing a trustee requirement in a condominium foreclosure proceeding conflicts with the Condominium Ownership Act requirements, which require only that the sale be conducted by the "manager or management committee." *Id.* Because the Condominium Ownership Act prevails over the Trust Deed Act, the Association asserts that no trustee is required to conduct a foreclosure.

¶15     Interpreting the interplay between the Condominium Ownership Act and the Trust Deed Act is an issue of first impression in Utah courts.[8] "When interpreting a statute, we look

---

8. McQueen cites *General Glass Corp. v. Mast Construction Co.*, 766 P.2d 429 (Utah Ct. App. 1988), for the proposition that failure to convey title to a trustee prevents a valid nonjudicial foreclosure proceeding or sale. *See id.* at 432 (determining that a document purporting to be a trust deed was ineffective because it failed to

(continued...)

first to its text. We employ plain language analysis to carry out the legislative purpose of the statute as expressed through the enacted text." *Richards v. Brown,* 2012 UT 14, ¶ 23, 274 P.3d 911 (footnote citations omitted). Based on this basic rule of statutory construction, we agree with the district court's application of the Trust Deed Act to a nonjudicial foreclosure of an assessment lien and its determination that the appointment of a qualified trustee with the power of sale is necessary to conduct a nonjudicial foreclosure or sale of an assessment lien.

¶16    Subsection 57-8-20(4)(b) of the Condominium Ownership Act states that an assessment lien "may be enforced by sale or foreclosure of the unit owner's interest by the manager or management committee." Utah Code Ann. § 57-8-20(4)(b). In addition, "[t]he sale or foreclosure shall be conducted in the same manner as foreclosures in deeds of trust or mortgages or in any other manner prescribed by law." *Id.* We draw two conclusions from our reading of these provisions. First, a manager or management committee may enforce an assessment lien. Second, the manager or management committee's enforcement of an assessment lien–-through foreclosure or sale—must be carried out in a manner consistent with the requirements of the Trust Deed Act, should the manager or management committee elect that option.[9] The statute provides no further guidance, and courts

---

8. (...continued)
identify or name a trustee). McQueen also cites cases from other states to support his argument that use of an unqualified trustee in a foreclosure proceeding voids a trustee's sale. *See Dimock v. Emerald Properties. LLC,* 97 Cal. Rptr. 2d 255, 261 (Cal. Ct. App. 2000); *White v. Simpson*, 915 P.2d 1004, 1008–09 (Or. Ct. App. 1996). Because we reach our resolution by applying rules of statutory construction, we need not look to the law in other states.

9. A foreclosure or sale may also be carried out consistent with the law of mortgages which involves judicial proceedings. *See generally*
(continued...)

"should avoid adding to or deleting from statutory language, unless absolutely necessary to make it a rational statute." *Lorenzo v. Workforce Appeals Bd.*, 2002 UT App 371, ¶ 11, 58 P.3d 873 (citation and internal quotation marks omitted). Nor does the statute parse out which specific sections of the Trust Deed Act apply. The statute simply states that an assessment lien foreclosure or sale must be conducted "in the same manner as foreclosures in deeds of trust or mortgages or in any other manner prescribed by law." *Id.*

¶17    Our analysis of the plain language of the Condominium Ownership Act and Trust Deed Act leads us to conclude that more than just the Trust Deed Act provisions relating to timing and notice, as argued by the Association, should apply to a nonjudicial foreclosure of an assessment lien. In construing the two statutes together, we determine that the Condominium Ownership Act forms a foundational base for the foreclosure of an assessment lien on a condominium unit, which base is supplemented by the Trust Deed Act. In other words, just because elements of the Trust Deed Act are incorporated by reference in the Condominium Ownership Act does not mean that the two statutes conflict. As a result, the manager or management committee that pursues foreclosure without involving the court must appoint a qualified trustee to conduct the sale or foreclosure of a condominium owner's interest in the unit. This interpretation harmonizes the Condominium Ownership Act with the Trust Deed Act and avoids the conflicts envisioned by the Association. Therefore, we determine the district court correctly ruled that "[n]owhere in the Condominium Act is the need for a trustee in a non-judicial sale eliminated."

---

9. (...continued)
Utah Code Ann. §§ 78B-6-901 to -909 (LexisNexis 2012). Because the case before us involves a nonjudicial foreclosure sale, we determine only whether the Trust Deed Act is applicable. *See id.* § 57-8-20(4)(b) (2010).

¶18    The Association argues that appointment of a trustee under the Condominium Ownership Act is unnecessary. According to the Association, the provisions of the Trust Deed Act that discuss a trustee's duties could just as easily be applied to the party conducting the foreclosure or sale, even though that party is not an appointed trustee. Though that approach may functionally be true, it is nonetheless legally inconsistent with our interpretation discussed above. Additionally, the Association argues that because the trustee requirement does not explicitly exist in the Condominium Ownership Act, such a requirement is not only inapplicable, it is not permitted. Thus, it appears that the Association asserts that in order to require the appointment of a trustee, the Condominium Ownership Act must expressly instruct a party to do so. Yet, this interpretation ignores the plain language construction of both statutes. Because the Trust Deed Act requires appointment of a qualified trustee, we find this same requirement applicable to the nonjudicial foreclosure or sale of a condominium unit. *See id*. §§ 57-1-19(3), -21(3),(4).

C. The Absence of a Trustee in the Present Case

¶19    Next, the Association argues that its attorney was legally authorized to act on its behalf and conduct the foreclosure sale of McQueen's condominium. The Association argues that it was appropriate and proper for its attorney to prepare all paperwork necessary for the sale, to conduct the sale, and to execute all documents necessary for the sale of the condominium. We disagree. The record reveals that, though its attorney may have qualified as a trustee under the Trust Deed Act, the Association failed to appoint its attorney as such.

¶20    The Association's argument again ignores the plain language of subsection 57-8-20(4)(b) of the Condominium Ownership Act, which vests the power of sale only in a "manager or management committee." Utah Code Ann. § 57-8-20(4)(b) (2010). While it may be true that principles of agency allow a management committee to delegate the power of sale to its attorney, the attorney

must still be a properly appointed and qualified trustee. Based upon the interplay between the Condominium Ownership Act and the Trust Deed Act, we determine that the plain language of subsection 57-8-20(4)(b) does not extend the power of sale to the Association's attorney without appointment as a qualified trustee. Nor did the Association attempt to appoint a trustee once the foreclosure process began. The Association simply delegated all responsibility for the matter to its attorney, who was never officially appointed as trustee.[10] Section 57-1-21(4) of the Trust Deed Act clearly indicates that if no trustee has been appointed, as is the case here, then "the power of sale and other trustee powers under the trust deed may be exercised only if the beneficiary has appointed a qualified successor trustee." *Id.* § 57-1-21(4). No qualified successor trustee was appointed in this instance.

¶21    The purpose of requiring the appointment of a qualified trustee is to provide an independent third party who can objectively execute a foreclosure or sale in the absence of judicial oversight. *See generally Russell v. Lundberg*, 2005 UT App 315, ¶ 22, 120 P.3d 541 ("[A] trustee has a duty to act with reasonable diligence and good faith on [the trustor's] behalf consistent with [the trustee's] primary obligation to assure payment of the secured debt." (alterations in original) (citation and internal quotation marks omitted)). Indeed, while a trustee's obligations in a trust deed relationship do not normally rise to the level of fiduciary duty, a trustee is not without any duty whatsoever. *See id.* ("While a trustee's primary duty and obligation is to the beneficiary of the trust, the trustee's duty to the beneficiary does not imply that the trustee may ignore the trustor's rights and interests." (citations and

---

10. Attorneys may properly serve as trustees if they are qualified and appointed. *See* Utah Code Ann. § 57-1-21(1)(a)(i) ("The trustee of a trust deed shall be: (i) any active member of the Utah State Bar who maintains a place within the state where the trustor or other interested parties may meet with the trustee . . . ."). Though it appears that the Association's attorney was qualified, the Association's attorney was never appointed as trustee.

internal quotation marks omitted)); *Blodgett v. Martsch*, 590 P.2d 298, 302 (Utah 1978) ("The duty of the trustee under a trust deed is greater than the mere obligation to sell the pledged property in accordance with the default provision of the trust deed instrument, it is a duty to treat the trustor fairly and in accordance with a high punctilio of honor."). This underlying rationale behind the trustee requirement thus strengthens our conclusion that a party must appoint a qualified trustee in order to enforce an assessment lien without judicial intervention. Because the Association failed to properly appoint a qualified trustee, we affirm the district court's determination that the sale of McQueen's condominium unit to Exchange was invalid.

## II. McQueen Is Not Entitled to Attorney Fees Because His Claim Did Not Arise Under the Condominium Declaration, Under an Applicable Statute, or as Consequential Damages.

¶22    After the bench trial in March 2010, the district court issued a memorandum decision, ruling that McQueen was entitled to "reasonable attorney fees for efforts to recover title and possession of the property." The Association then submitted a motion to amend or modify that decision, which the court granted. The district court issued its final ruling on the matter on March 17, 2011, stating, "As a matter of law, McQueen is not entitled to recover his attorney[] fees from the Association or Fox/Exchange based upon the provisions of the condominium declaration, the judicial equitable exception rule, as a component of consequential damages, or otherwise." The district court also dismissed McQueen's attorney fees claim with prejudice. On appeal, McQueen argues that the district court erred in denying his request for attorney fees.

### A. The Condominium Declaration and Utah Code Section 78B-5-826

¶23    McQueen first argues that the court should have awarded his attorney fees based upon an application of Utah's Reciprocal

Fee Statute to the condominium declaration at issue in this case. *See* Utah Code Ann. § 78B-5-826 (LexisNexis 2012). The pertinent statute states,

> A court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees.

*Id*. "The plain language of the Reciprocal Fee Statute indicates that 'a court may award costs and attorney fees to a prevailing party in a civil action if two main conditions are met.'" *Anderson & Karrenberg v. Warnick*, 2012 UT App 275, ¶ 10, 289 P.3d 600 (quoting *Bilanzich v. Lonetti*, 2007 UT 26, ¶ 14, 160 P.3d 1041). "The first condition is that 'the civil action must be based upon any . . . written contract,' and the second is that the contract 'must allow at least one party to recover attorney's fees.'" *Id*. (quoting *Bilanzich*, 2007 UT 26, ¶ 14 (citation and internal quotation marks omitted)).

¶24    We determine that McQueen does not satisfy the first condition of the statute. McQueen argues that he sought to enforce the terms of the condominium declaration by suing the Association for breach of its provisions. *See Hooban v. Unicity Int'l, Inc.*, 2012 UT 40, ¶ 22, 285 P.3d 766 ("[A]n action is 'based upon' a contract under the statute if a 'party to the litigation assert[s] the writing's enforceability as basis for recovery.'" (second alteration in original) (quoting *Bilanzich* 2007 UT 26, ¶ 15)). McQueen points to his second amended complaint as support for his claim that the Association breached the condominium declaration.[11] However, none of the

---

11. Specifically, McQueen argues that his second amended complaint alleged that the Association's notice of lien, which initiated the foreclosure proceedings, was flawed; that the

(continued...)

five counts listed in McQueen's second amended complaint expressly or substantively alleged a breach of the condominium declaration. To the contrary, McQueen sued the Association on just two grounds—seeking to quiet title to the property and alleging slander of title. He prevailed only on the quiet title action. The remaining counts—slander of title (again), unjust enrichment, waste, and trespass—were levied against Exchange.

¶25     McQueen's quiet title action is distinct from a suit based upon breach of the condominium declaration, even though the two may be related. The principal purpose behind the quiet title action was to establish rightful ownership of the condominium unit, not to enforce the condominium declaration. *See Andrus v. Bagley*, 775 P.2d 934, 935 (Utah 1989) ("The purpose of a quiet title action is to perfect an interest in property that exists at the time suit is filed."). Though it is true that a part of the quiet title litigation below involved analysis of the condominium declaration, resolution of the case ultimately turned upon the district court's interpretation of the Condominium Ownership Act and Trust Deed Act. Moreover, the parts of the condominium declaration providing for attorney fees refer to the Association's available remedies upon nonpayment of assessments. If McQueen had sued the Association based on whether he actually paid his assessments, then perhaps this case could be construed as one arising under the condominium declaration. Yet McQueen sought clear title to the condominium, a cause of action which we determine to be independent and distinct from a cause of action seeking to enforce the condominium declaration; therefore, McQueen's suit cannot be characterized as one based upon a written contract. Furthermore, section 78B-5-826 "does not create an independent right to a fee award that the contract's attorney fee provision would not allow to either party simply because the fee provision is one-sided." *PC Crane Serv., LLC*

---

11. (...continued)
foreclosure was improperly conducted by a party not authorized by the declaration; and that the foreclosure was not conducted in compliance with the declaration's requirements.

*v. McQueen Masonry, Inc.*, 2012 UT App 61, ¶ 23, 273 P.3d 396. Therefore, section 78B-5-826 is inapplicable and McQueen is not entitled to attorney fees under this ground.

B. Attorney Fees as Consequential Damages

¶26    McQueen also claims he is entitled to his attorney fees as a result of the consequential damages he incurred. Recovery of attorney fees as consequential damages is a narrow exception to the normal rule requiring statutory or contractual authorization of an attorney fee award. *See Collier v. Heinz*, 827 P.2d 982, 983 (Utah Ct. App. 1992). Recovery of attorney fees as consequential damages generally applies in just two situations. The first is when the litigation is based on an insurance contract. *See Pugh v. North Am. Warranty Servs., Inc.*, 2000 UT App 121, ¶ 14, 1 P.3d 570 ("Our courts have carved out a narrow exception to [the] rule [requiring statutory or contractual authorization for attorney fees] in the insurance context."). This case is clearly not based on an insurance contract. Second, "[a] well-established exception to this general rule allows recovery of attorney fees as consequential damages, but only in the limited situation where the defendant's breach of contract foreseeably caused the plaintiff to incur attorney fees through litigation with a third party." *Collier*, 827 P.2d at 984; *see also Lewiston State Bank v. Greenline Equip., LLC*, 2006 UT App 446, ¶ 22, 147 P.3d 951. This exception refers to the third-party tort rule and does not apply in this case. McQueen would have had to assert and establish that the Association breached the condominium declaration and that the breach foreseeably caused him to incur attorney fees in litigation with a third party. Those facts do not exist here. Rather, the dispute is solely between the Association and McQueen and "under the third-party exception, attorney fees incurred in litigation between the contracting parties are not recoverable by the non-breaching party as damages." *Collier*, 827 P.2d at 984.

¶27    Moreover, this exception requires that damages result from a *breach of a contract*. *See id.* McQueen sued the Association seeking

to quiet title to the property and alleging slander of title, not for breach of the condominium declaration. McQueen's request for attorney fees is understandable after he was forced to bring suit against the Association to quiet title to his condominium. However, "attorney fees are recoverable under this exception only if they are caused by and are a foreseeable result of the original breach of contract, not a subsequent wrongful act." *Gardiner v. York*, 2006 UT App 496, ¶ 9, 153 P.3d 791. The Association's ineffective foreclosure was not a breach of the declaration, even though it may have been a procedurally wrongful act. Therefore, because this exception requires the award of damages arising from a breach of contract, it is inapplicable to this case. Accordingly, we conclude that McQueen is not entitled to attorney fees as a result of consequential damages.

CONCLUSION

¶28 The district court correctly construed the Condominium Ownership Act in conjunction with the Trust Deed Act to require the appointment of a qualified trustee with the power of sale. Because the Association failed to comply with this requirement, we affirm the district court's summary judgment ruling that the nonjudicial foreclosure sale was ineffective and void. We also affirm the district court's ruling that McQueen was not entitled to attorney fees under the reciprocal attorney fee statute or as a result of consequential damages because his quiet title claim did not arise under the condominium declaration.

———————

VOROS, Judge (concurring):

¶29 I concur in the result reached by the majority opinion, and agree with its analysis except as to one point. The fatal flaw in the Association's nonjudicial foreclosure was not the absence of a trustee, but the absence of a trust deed. I do not agree that under the controlling version of the statute the manager or management

committee of a condominium homeowners association may, *when no conveyance in trust has occurred*, appoint a qualified trustee. Nor do I agree that such a "trustee" may, upon a unit owner's non-payment of assessments, notice and conduct a public sale and, presumably, convey to the highest bidder fee simple title to the condominium.

¶30    In this context, a trustee is "a person to whom title to real property is conveyed by trust deed, or his successor in interest." Utah Code Ann. § 57-1-19(4) (LexisNexis 2010). A trust deed is a deed, executed in conformity with title 57, "conveying real property to a trustee in trust to secure the performance of an obligation of the trustor or other person named in the deed to a beneficiary." *Id.* § 57-1-19(3). Thus, "a trust deed is a conveyance by which title to the trust property passes to the trustee." *First Sec. Bank of Utah, NA v. Banberry Crossing*, 780 P.2d 1253, 1256 (Utah 1989). Unlike the majority, I cannot see how a party (such as the management committee of the Association) that does not hold title to a condominium can convey title to a "trustee." Nor can I see how a "trustee" who does not hold title could, in turn, convey title to the purchaser at a public sale.

¶31    The Condominium Ownership Act does of course incorporate by reference some portion of the Trust Deed Act. The relevant provision states that a "lien for nonpayment of an assessment may be enforced by sale or foreclosure of the unit owner's interest by the manager or management committee . . . in the same manner as foreclosures in deeds of trust or mortgages or in any other manner permitted by law." Utah Code Ann. § 57-8-20(4)(b) (2010). However, I do not read this generalized language to eliminate what I view as a necessary prerequisite to the exercise of a power of sale: the conveyance of the property in trust to secure the performance of an obligation.

¶32    As noted in the majority opinion, the Legislature has since amended the Condominium Ownership Act to effect just such a conveyance by operation of law when a buyer purchases a

condominium. *See id.* § 57-8-45(2) (Supp. 2012). "[W]e presume that when the legislature amends a statute, it intended the amendment to change existing legal rights." *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 13, 227 P.3d 256 (citations and internal quotation marks omitted). A statutory amendment may nevertheless be given retroactive effect if it merely clarifies the meaning of the existing statute or if any change is merely procedural. *Id.* ¶ 14. But here, the Association acknowledges that these amendments "are prospective only." Accordingly, they reinforce rather than undermine my reading of the Condominium Ownership Act.

———